UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ESTUARDO RODOLFO CUA SACAYON,<br><br>Petitioner,<br><br>v.<br><br>BRUCE SCOTT, *et al.*,<br><br>Respondents. | Case No. C26-2909-MLP<br><br>ORDER |

Petitioner is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. He filed, through counsel, this 28 U.S.C. § 2241 habeas action, challenging as unconstitutional an immigration judge's ("IJ") July 27, 2026, bond denial based on flight risk. (*See generally* dkt. # 1.) He seeks release from immigration custody and also requests this Court retain jurisdiction to ensure compliance with the Court's Order. (*Id.* at 19-20.) Respondents filed a return (dkt. # 6), together with declarations from their counsel, Barbara Andrade (dkt. # 7) ("Andrade Decl.") and U.S. Department of Homeland Security ("DHS") Deportation Officer Enrique Rodriguez (dkt. # 8) ("Rodriguez Decl."). Petitioner filed a traverse in reply (dkt. # 9). Respondents also filed a "true and correct copy" of the transcript from the challenged bond hearing. (*See* dkt. # 11-1.)

Having considered the parties' submissions and the governing law, the Court GRANTS in part the petition (dkt. # 1) for the reasons set forth below.[1]

## I. BACKGROUND

Petitioner is a native and citizen of Guatemala. (Dkt. # 1 at 3.) On May 11, 2023, U.S. Border Patrol arrested Petitioner near Naco, Arizona and "expelled him from the United States under Title 42 restrictions."[2] (Rodriguez Decl., ¶ 5.) Respondents do not know when Petitioner last entered the United States, but Petitioner asserts he has resided in the United States since approximately May 15, 2023.[3] (*Id.* ¶ 6; dkt. # 1 at 3.)

On June 17, 2026, a "Fugitive Operations Unit and Homeland Security Investigations" team arrested Petitioner in Lakewood, Washington during a "targeted enforcement operation[.]" (Rodriguez Decl., ¶ 7.) Petitioner was served with a warrant for his arrest and a Notice to Appear ("NTA"), charging him with inadmissibility under the Immigration and Nationality Act ("INA"). (*Id.*) He was thereafter transported to the NWIPC, where he remains detained. (*Id.* ¶ 8.)

After his June 17, 2026 arrest, Petitioner sought habeas relief in this Court, challenging his immigration detention under 8 U.S.C. § 1225(b). *Torres-Padilla v. Hernandez*, Case No. 2:26-cv-02343-TMC, Dkt. # 9 at 1 (W.D. Wash. July 13, 2026). On July 13, 2026, the Honorable Tiffany Cartwright granted Petitioner's petition and ordered Respondents to provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a), or release him from custody, within fourteen days

---

[1] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 4.)

[2] *See* United States Customs and Border Protection, *Nationwide Enforcement Encounters: Title 8 Enforcement Actions and Title 42 Expulsions*, https://www.cbp.gov/newsroom/stats/cbp-enforcement-statistics/title-8-and-title-42-statistics (last accessed Sept. 18, 2026).

[3] The record does not resolve the conflicting dates of Petitioner's entry but is it not material for resolution of this petition.

of his request for a hearing. *Id.* at 3. The bond hearing was subsequently scheduled for July 27, 2026. (Rodriguez Decl., ¶ 12.)

In the interim, on July 23, 2026, an IJ "found Petitioner removable as charged in the NTA" but continued Petitioner's merits hearing so Petitioner could file an application for immigration relief. (Rodriguez Decl., ¶ 13.) Petitioner's immigration merits hearing was rescheduled for September 18, 2026. (*Id.* ¶ 16.) Petitioner is represented by a different lawyer in his immigration proceedings, but his present petition asserts a forthcoming asylum application. (Dkt. # 1 at 13 n.1.)

On July 27, 2026, the immigration court held the bond hearing ordered under *Torres-Padilla*. (Rodriguez Decl., ¶ 14.) Prior to the bond hearing, Petitioner submitted a "bond package" that included over 100 pages of information Petitioner believed to be relevant to his request for bond. (Dkt. # 1 at 5.) The package included evidence of Petitioner's identity, his family ties to the United States, his U.S. residence and employment history, approximately twenty-seven character letters from community and family members, and documents related to Petitioner's participation in his local church. (*See generally* dkt. # 10.) It is unclear from the record whether the government filed anything in response to Petitioner's bond request.

At the bond hearing, the IJ denied bond, finding Petitioner failed to prove he was not a flight risk. (Rodriguez Decl., ¶ 14; *see* Andrade Decl., ¶ 2, Ex. C.) As further discussed below, the IJ found that "[Petitioner], in spite of his significant ties [to the United States], is a flight risk since he has minimal relief from the United States." (Dkt. # 11-1 at 14.) The IJ found it notable that Petitioner had "no relief filed before [the immigration court] at all." (*Id.*)

The IJ issued her ruling using a checkbox form. The box indicating "Flight Risk" is checked. (*See* Andrade Decl., ¶ 2, Ex. C.) Under the "Additional Information" section, a box is

checked indicating "Conditional release is DENIED under any conditions set by ICE/DHS." (*Id.* at 3.) The box indicating the IJ considered Petitioner's ability to pay a bond is also checked. (*Id.*) The written form contains no other findings or analysis. (*Id.*)

It appears from the record that Petitioner did not appeal the IJ's bond decision before the August 26, 2026, appeal due date.

On August 15, 2026, Petitioner filed the instant petition. (Dkt. # 1.)

## II. LEGAL STANDARDS

District courts may grant writs of habeas corpus "within their respective jurisdictions." 28 U.S.C. § 2241(a). This authority extends to challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). A petitioner may obtain relief by showing that he is "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c). A petitioner bears the burden of proof by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

## III. DISCUSSION

Petitioner's sole claim challenges the IJ's bond denial as unconstitutional under the Due Process Clause of the Fifth Amendment. (Dkt. # 1 at 2.) Petitioner asserts that the IJ's decision was "unsupported by factual findings, legal reasoning, or any indication that the required statutory and constitutional standards were meaningfully applied." (*Id.*) Accordingly, asserts Petitioner, his "continued detention is unsupported by a lawful basis and is constitutionally deficient." (*Id.*)

Respondents do not meaningfully engage with the IJ's substantive bond decision or otherwise argue that it *was* supported by adequate factual findings or legal reasoning. (*See generally* dkt. # 6.) Instead, it appears Respondents primarily argue the petition should be denied

because Petitioner failed to exhaust his administrative remedies by appealing the IJ's decision, which Respondents contend would have led to a more developed factual record. (*Id.* at 6.) Respondents relatedly assert that none of the factors justifying excusal or waiver of exhaustion are satisfied. (*Id.* at 6-10.)

**A. The Court Waives Exhaustion**

As an initial matter, both parties brief their respective positions (and reach opposite conclusion) regarding whether Petitioner should first exhaust his administrative remedies before seeking habeas relief here (*see* dkt. ## 1 at 7-9, 6 at 6-10), but it is not entirely clear whether there remains an available remedy for Petitioner to exhaust. The IJ's order set the appeal deadline for her bond decision as August 26, 2026. (Andrade Decl., ¶ 2, Ex. C at 3.) Respondents filed their return memorandum three days after the deadline passed, but do not mention whether an appeal was filed. (*See generally* dkt. # 6.) Petitioner also tacitly acknowledges in his reply that he did not file an appeal of the IJ's decision. (*See generally* dkt. # 9.) Neither party acknowledges the expired deadline nor explains whether filing an appeal remains a viable option.

Even if Petitioner's appeal is not time barred, the Court would waive exhaustion. In cases brought under § 2241, exhaustion is a prudential, rather than jurisdictional, requirement. *See Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). The Court may waive the exhaustion requirement if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Hernandez*, 872 F.3d at 988 (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)). The party seeking waiver of exhaustion bears the burden to show one of the "*Laing*" factors applies. *Aden v. Nielsen*, 2019 WL 5802013, at *2 (W.D. Wash. Nov. 7, 2019) (citations omitted).

The Court finds that waiver of the exhaustion requirement is appropriate here, under *Laing*, as administrative remedies are "inadequate or not efficacious" and "irreparable injury would result." *Laing*, 370 F.3d at 1000. Recent government data reflects an average processing time of 204 days for BIA bond appeals. *Rodriguez Vazquez v. Bostock*, 802 F. Supp. 3d, 1297, 1307 (W.D. Wash. 2025), *aff'd sub nom*. *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160 (9th Cir. 2026). Petitioner has been detained since June 2026 and requiring him to wait for BIA review "would inflict the kind of harm that the bond hearing was designed to prevent—that is, prolonged detention without meaningful process." *Zavala Sandoval v. Hernandez*, 2026 WL 1661379, at *3 (W.D. Wash. June 9, 2026) (citations omitted); *Garcia Miranda v. Hernandez*, 2026 WL 1328227, at *3 (W.D. Wash. May 13, 2026).

Petitioner is, at minimum, an economic provider for his wife and two minor-aged daughters, one of whom is a U.S. citizen. (Dkt. # 1 at 11.) Petitioner is described by his spouse as a "fundamental pillar of [their] home, providing essential support for our stability." (*Id.* at 4; dkt. # 10 at 19.) The Ninth Circuit has acknowledged that "economic burdens imposed on detainees and their families as a result of detention" as well as "the collateral harms to children of detainees whose parents are detained" are relevant considerations in the irreparable harm analysis. *Hernandez*, 872 F.3d at 995. *See also Washington v. Trump*, 847 F.3d 1151, 1169 (9th Cir. 2017) (acknowledging the separation of families as "substantial injuries and even irreparable harms").

Moreover, as Petitioner notes, courts in this District have repeatedly waived the exhaustion requirement when the alleged defect in the bond hearing is constitutional. (*See* dkt. # 1 (and the Western District cases cited therein).) The Court therefore waives any exhaustion requirement.

**B. The IJ Abused Her Discretion**

Habeas courts review an IJ's bond determinations for an abuse of discretion. *See Martinez v. Clark*, 124 F.4th 775, 779–80 (9th Cir. 2024). Under an abuse of discretion standard, the court is not permitted to reweigh evidence; it can determine only whether the correct legal standard was applied. *Id.* at 785 (citing *Konou v. Holder*, 750 F.3d 1120 (9th Cir. 2014)).

To determine whether a noncitizen is a danger to the community or a risk of flight, an IJ weighs any or all of nine non-exhaustive factors under *In Re Guerra*, 24 I. & N. Dec. 37 (BIA 2006): (1) whether the noncitizen has a fixed address in the United States; (2) the noncitizen's length of residence in the United States; (3) the noncitizen's family ties in the United States, and whether they may entitle the noncitizen to reside permanently in the United States in the future; (4) the noncitizen's employment history; (5) the noncitizen's record of appearance in court; (6) the noncitizen's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the noncitizen's history of immigration violations; (8) any attempts by the noncitizen to flee prosecution or otherwise escape from authorities; and (9) the noncitizen's manner of entry to the United States. *Martinez*, 124 F.4th at 783 (citing *Guerra*, 24 I. & N. Dec. at 40).

The IJ has "broad discretion in deciding the factors that he or she may consider" and "may choose to give greater weight to one factor over others, as long as the decision is reasonable." *Guerra*, 24 I. & N. Dec. at 40. To sustain a permissible flight risk finding, any factor considered by an IJ must rationally bear on a noncitizen's likelihood to appear for immigration proceedings. *Matter of Patel*, 15 I. & N. Dec. 666, 667 (BIA 1976) (reversing flight risk finding where IJ relied on factors bearing "little if any relevance to the issue of whether or not the [noncitizen] is likely to appear for his deportation proceeding").

Here, the IJ focused exclusively on what she characterized as "minimal relief from the United States." (Dkt. # 11-1 at 14.) Her findings and rationale read, in full:

> The Court is not required to issue a full Oral Decision on its factual findings and legal conclusions. That is not required. In fact, that was specifically overruled by the Ninth Circuit Court of Appeals in *Padilla*. The Court will only issue factual findings and legal conclusions if an appeal is taken. That will generate the Court's responsibility to file a bond memorandum. At this time, the Court will issue an order, finding Respondent met his burden that he is not a danger to the community. The Court does, however, find that Respondent, in spite of his significant family ties, is a flight risk since he has minimal relief from the United States.
>
> In fact, at this point, he has no relief filed before this Court at all. The only thing Respondent would be eligible for at this time is voluntary departure. Despite having a mother and a brother that have legal status in the United States, no one has ever filed a petition for him. The Court will explain in greater detail its findings, if in fact an appeal is taken. That will, again, trigger the Court's responsibility to issue a written order.
>
> . . .
>
> So, the Court finds that no bond is the only thing that will secure your appearance at future Immigration Court proceedings, since at this time, you have no relief available to you, and you haven't filed anything. That is one of the Court's findings.

*Id.* at 14-15.

The BIA has identified that an IJ may consider the likelihood that relief from removal will be granted in determining whether a noncitizen is a flight risk because "[a] [noncitizen] with a greater likelihood of being granted relief from deportation has a greater motivation to appear for a deportation hearing than one who, based on a criminal record or otherwise, has less potential of being granted such relief." *Matter of Andrade*, 19 I. & N. Dec. 488, 490 (BIA 1987); *see also Matter of R-A-V-P-*, 27 I. & N. Dec. 803, 805 (BIA 2020). However, the mere fact of a removal order or the lack of other potential forms of relief do not suffice to establish flight risk. *See, e.g.*, *Segura Serrano v. Scott*, 2026 WL 1674357, at *7 (W.D. Wash. May 26, 2026); *Tavurov v. Noem*, 2026 WL 1283513, at *7 (W.D. Wash. May 11, 2026) (citing *Singh v. Holder*,

638 F.3d 1196, 1205 (9th Cir. 2011), *abrogation on statutory grounds recognized by Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022)); *Henry A.V.L. v. Warden of the Cent. Valley Annex Det. Facility*, 2026 WL 1999944, at *3 (E.D. Cal. July 10, 2026) (collecting district court cases within the Ninth Circuit).

At the bond hearing, Petitioner presented significant evidence of his ties to the United States: an established residence in Kennewick, federal taxpayer status, business licensure, family in the United States, a lack of criminal history, and no history of failing to appear for immigration proceedings. (*See generally* dkt. # 10.) Under the *Guerra* factors, this evidence weighs heavily in Petitioner's favor and supports release or bond. However, the transcript does not indicate that the IJ considered or engaged with those positive equities or explained why they were ultimately outweighed by the purported limited immigration relief such that Petitioner posed an unmitigable risk of flight. (*See* dkt. # 11-1 at 14 (finding "no bond is the only thing that will secure [Petitioner's] appearance at future Immigration Court proceedings").) At most, the IJ acknowledged Petitioner's "significant family ties," but summarily concluded without more that Petitioner "is a flight risk since he has minimal relief from the United States." (Dkt. # 11-1 at 14.) The IJ does not otherwise provide an explanation "why it should be concluded that under these circumstances Petitioner would try to flee rather than appear in immigration court to pursue claims for relief from removal proceedings, even if such claims were considered weak." *Soriano v. Hernandez*, 830 F. Supp. 3d 1071 (W.D. Wash. 2026). And when the Court is "left to speculate concerning how the immigration judge viewed the evidence in light of applicable factors, it must conclude the IJ failed to do so, which constitutes an abuse of discretion." *Vasquez Lopez v. Hernandez*, 830 F. Supp. 3d 1097, 1103 (W.D. Wash. 2026) (citation modified).

The IJ's reason for denying bond does not stand on its own and it does not appear the IJ considered, or engaged with, the significant amount of evidence in Petitioner's favor. An IJ must meaningfully engage with such evidence. *See, e.g., Miri v. Bondi*, 2026 WL 622302, at *8-9 (C.D. Cal. Mar. 5, 2026) (finding an abuse of discretion where an immigration judge did not explain the reasons for denying bond); *Soto Gimenez v. Hernandez*, 2026 WL 1156075, at * 8 (W.D. Wash. Apr. 29, 2026) (failure to engage with evidence and absence of articulated reasoning constitutes an abuse of discretion). No reasonable adjudicator could conclude on this record that Petitioner poses a flight risk simply because of minimal immigration relief. The IJ's decision was an abuse of discretion and Petitioner's continued detention violates due process.

**C. Remedy**

The parties disagree on an appropriate remedy if habeas relief is granted. Respondents contend that release is not appropriate. (Dkt. # 6 at 11.) Instead, Respondents suggest the Court should require the IJ to issue a written bond memorandum clearly setting forth the reasoning for the flight risk finding, or order Respondents to provide a transcript of the hearing. (*Id.*) Because Respondents already provided the latter (*see* dkt. # 11-1), the Court sees no reason to order the former. Just as a petitioner "should not be required to appeal simply to obtain an explanation for her continued detention," *Roberts v. Scott*, 2026 WL 2071146, at *4 (W.D. Wash. July 17, 2026), the Court identifies no purpose served by ordering the IJ to prepare a written memorandum here. Nor do Respondents cite legal authority for this Court to do so. The transcript from the bond hearing filed by Respondents provides a sufficient record to assess the lawfulness of the IJ's decision. *See Singh*, 638 F.3d at 1208 (recognizing "[p]ost-hoc reconstruction" can be inadequate because, "once the court has entered judgment, it may become subject to the very natural weight of its conviction, tending to focus on that which supports its holding").

Federal courts have a "fair amount of flexibility" in fashioning specific habeas relief. *Burnett v. Lampert*, 432 F.3d 996, 999 (9th Cir. 2005). This jurisdiction has found no basis for similarly situated petitioners to continue to be detained. *See Valdez-Reyes v. Scott*, 2026 WL 1361635, at *4 (W.D. Wash. May 15, 2026) (ordering immediate release); *Garcia Miranda*, 2026 WL 1328227, at *5 (same); *Soriano*, 2026 WL 969764, at *6 (same); *Vasquez Lopez*, 830 F. Supp. 3d at 1103 (W.D. Wash. 2026) (same); *W.T.M. v. Bondi*, 2026 WL 262583, at *5 (W.D. Wash. Jan. 30, 2026) (same). The Court finds the same here and thus the appropriate remedy is for Petitioner's immediate release with reasonable conditions of supervision.

Finally, Petitioner asks this Court to retain jurisdiction "to ensure compliance with the Court's Order and to resolve any disputes concerning its implementation." (Dkt. # 1 at 20.) While the Court has the authority to do so, *see Leonardo v. Crawford*, 646 F.3d 1157, 1161 (9th Cir. 2011), the Court is unaware of any instance of the government failing to release a habeas petitioner after being ordered to do so by a court in this District. Accordingly, the Court denies Petitioner's request to retain jurisdiction without prejudice. Nothing from this Order prevents Petitioner from filing another habeas petition, should he deem it necessary.

## IV. CONCLUSION

Based on the foregoing, the Court hereby ORDERS as follows:

(1) Petitioner's petition for writ of habeas corpus (dkt. # 1) is GRANTED in part.

(2) Respondents shall RELEASE Petitioner from custody within **twenty-four (24) hours** of the issuance of this Order with reasonable conditions of supervision.

(3) Respondents shall file a notice with the Court confirming Petitioner's release within **forty-eight (48) hours**.

(4) Petitioner's request for the Court to retain jurisdiction is DENIED.

(5) The Court will entertain any post-judgment motion for attorney's fees, as requested in the petition. Any fee petition must be filed within the deadline set by the Equal Access to Justice Act, 28 U.S.C. § 2412. The parties are reminded of the meet-and-confer requirement under this Court's chambers procedures.

Dated this 18th day of September, 2026.

MICHELLE L. PETERSON
United States Magistrate Judge